UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**JAY LEVERETTE,**

    Petitioner,

  v.

**WARDEN THOMPSON,**

    Respondent.

Case No. 24–cv–09560–ESK

OPINION

**KIEL, U.S.D.J.**

    **THIS MATTER** comes before the Court on petitioner Jay Leverette's petition for writ of habeas corpus under 28 U.S.C. § 2241 (Petition) arguing that the Bureau of Prisons (Bureau) violated the First Step Act and Second Chance Act by arbitrarily placing him in "opt out" status, which prevented him from earning credits towards early release. (ECF No. 1.) Respondent Warden Thompson opposes the Petition. (ECF No. 6.) For the following reasons, I will grant the Petition in part.

    **I.   FACTS AND PROCEDURAL HISTORY**

    Petitioner is presently detained at FCI Fort Dix, New Jersey (Fort Dix) after being convicted of aiding and abetting fraud in violation of 18 U.S.C. § 1344(2), and failing to surrender for service, in violation of 18 U.S.C. §§ 3146(a), (b)(1)(A)(I). (ECF No. 6 p. 17.) His projected release date from custody is May 15, 2025. Bureau Inmate Locator, available at https://www.bop.gov/inmateloc/ (last visited Mar. 24, 2025.)

    On May 6, 2024, petitioner's unit team evaluated petitioner for placement in a residential reentry center (reentry center) pursuant to the Second Chance Act, 18 U.S.C. § 3624(c)(1). (ECF No. 6–4 ¶ 10.) The team recommended that petitioner be placed in a reentry center for 120 days. (*Id.*; ECF No. 6–5 pp.7,

8.) Petitioner stated that he needed more time in a reentry center and could not agree to the 120 days. (ECF No. 1–1 p. 5.) His case manager interpreted that as a refusal for reentry center placement. (ECF No. 6–5 p. 10.) Petitioner was placed in refuse status on May 9, 2024. (*Id.* p. 12.) The Bureau determined that petitioner "was ineligible to apply earned time credits or to accrue program days while in 'refuse' status." (ECF No. 6 p. 18.) Petitioner was taken off of refuse status on October 24, 2024 after agreeing to participate in reentry center placement. (*Id.*; ECF No. 6–5 p. 12.) "On December 4, 2024, Warden Rachel Thompson approved an Institutional Referral for [Community Corrections Center] Placement recommending 120 days of [reentry center] placement for Leverette under the Second Chance Act; with 45 conditional placement days applied toward [reentry center]/home confinement, the referral form requested an [reentry center] placement date of January 6, 2025." (ECF No. 6 p. 18; ECF No. 6–5 p. 7.) The Bureau "disallowed 167 program days—from May 7 to October 16, 2024 and October 17 to October 22, 2024—due to [petitioner's] declined [reentry center]/home confinement placement status." (ECF No. 6 p. 18; ECF No. 6–5 pp. 16, 17.)

Petitioner filed his Petition on October 1, 2024. (ECF No. 1.) Respondent submitted an answer on December 12, 2024, opposing the Petition in its entirety. (ECF No. 6.)[1]

## II. LEGAL STANDARD

Title 28, Section 2243 of the United States Code provides in relevant part:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why

---

[1] Petitioner filed documents after the close of briefing objecting to more recent Bureau decisions. (ECF Nos. 10, 11.) These concerns must be addressed in a separate habeas petition as they do not arise from Bureau decisions named in the Petition.

2

> the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

A habeas corpus petition is the proper mechanism for a federal prisoner to challenge the "fact or duration" of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 498–99 (1973); *see also Muhammad v. Close*, 540 U.S. 749 (2004).

A *pro se* pleading is held to less stringent standards than more formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A *pro se* habeas petition must be construed liberally. *See Hunterson v. DiSabato*, 308 F.3d 236, 243 (3d Cir. 2002).

### III.   DISCUSSION

#### A.   First Step Act Programming Credits

The First Step Act "is a comprehensive prison reform package enacted by Congress in December 2018. A primary goal of the [First Step Act] is to reduce recidivism of federal prisoners upon their release from imprisonment." *Kowalewski v. Warden, FCI Fort Dix*, No. 23–cv–20320, 2024 WL 3964289, at *1 (D.N.J. Aug. 27, 2024). The Bureau developed the Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) system, "to determine the type and amount of evidence-based recidivism reduction programming appropriate for each inmate and to assign recommended programming based on the inmate's specific criminogenic needs." First Step Act - Frequently Asked Questions, available at https://perma.cc/YK3U-2TC7 (last visited Mar. 24, 2025); *see also* 18 U.S.C. § 3632(a)(3). "Eligible inmates who 'successfully participate in recidivism reduction programs or productive activities' earn time credits, which may be 'applied toward time in prerelease custody or supervised release.'" *Kowalewski*, 2024 WL 3964289, at *1 (quoting 18 U.S.C. § 3632(d)(4)(C); 28 C.F.R. § 523.44(b)). "Time credits applied toward early

supervised release result in a shorter duration in [Bureau] custody. Prerelease custody consists of home confinement or a [reentry center] in a [Bureau]-sponsored facility." *Id.* (internal citation omitted); *see also* 18 U.S.C. § 3624(g)(2)(A)–(B). Prisoners earn 10 days of time credits for every 30 days of successful participation. 18 U.S.C. § 3632(d)(4)(A)(i)[2]

Respondent argues that petitioner was appropriately placed on "opt out" status because he was not "successfully participating" in his recommended programs when he rejected the 120-day reentry center placement. (ECF No. 6 p. 22.) "'Successful participation' requires a determination by Bureau staff that an eligible inmate has participated in the [recidivism reduction] programs or [productive activities] that the Bureau has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular [recidivism reduction] Program or [productive activity]." 28 C.F.R. § 523.41(c)(2). Inmates "will generally not be considered to be 'successfully participating' in [recidivism reduction] programs or [productive activities] in situations including … : 'Opting out' (choosing not to participate in the [recidivism reduction] programs or [productive activities] that the Bureau has recommended based on the inmate's individualized risk and needs assessment)." 28 C.F.R. § 523.41(c)(4)(v). "Opting out will result in exclusion from further benefits or privileges allowable under the [First Step Act], until the date the inmate 'opts in' (chooses to participate in the [recidivism reduction] programs or [productive activities] that the Bureau has recommended based on the inmate's individualized risk and needs assessment, as documented by staff)." 28 C.F.R. § 523.41(c)(5)(iii).

---

[2] "[A] 'day' is counted for each calendar day on which [the inmate] participates in assigned programming whether or not it lasts a full eight hours." *Mark v. Birkholz*, No. 21–cv–01418, 2022 WL 11321123, at *2 (D. Minn. Aug. 4, 2022).

Petitioner asserts the Bureau erroneously placed him in "opt out" status, causing him to lose 167 days of programming credit before the Bureau reinstated him. (ECF No. 1 pp. 9, 11, 15.)[3] He argues that a reentry center placement is not a recidivism reduction program or a productive activity within the meaning of the First Step Act. (ECF No. 1–1 p. 15.) I agree and find the Bureau's decision to be at odds with the plain language of the First Step Act; therefore, the Bureau will be ordered to recalculate petitioner's programming credits and apply them appropriately.

A "[recidivism reduction] program is a group or individual activity that has been shown by empirical evidence to reduce recidivism or is based on research indicating that it is likely to be effective in reducing recidivism; and is designed to help prisoners succeed in their communities upon release from prison." 28 C.F.R. § 523.41(a). "A [productive activity] is a group or individual activity that allows an inmate to remain productive and thereby maintain or work toward achieving a minimum or low risk of recidivating." 28 C.F.R. § 523.41(b). Respondent concedes that the Bureau's "regulations and program statement do not explicitly address the situation here—an inmate who refuses [reentry center] placement and the impact of that action on his ability to earn time credits—[reentry center] placement serves the same role as other [recidivism reduction] and [productive activities] and there is good reason for the [Bureau] to take this position." (ECF No. 6 p. 23.) "Simply put, if an inmate has release needs that the [Bureau] can address through [reentry center] placement but nonetheless 'opts out' of the placement, that inmate should not receive the benefit of time credits." (*Id.* p. 24.)

---

[3] Respondent concedes petitioner exhausted the Bureau's administrative remedy program. (ECF No. 6 p. 19.)

"Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority … ."  *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412 (2024).  "When the meaning of a statute [is] at issue, the judicial role [is] to 'interpret the act of Congress, in order to ascertain the rights of the parties.'"  *Id.* at 385 (quoting *Decatur v. Paulding*, 39 U.S. 497, 503 (1840)).  The text of the First Step Act incentivizes inmate participation in recidivism reduction programs and productive activities by allowing inmates to earn credits that "shall be applied toward time in prerelease custody or supervised release."  18 U.S.C. § 3632(d)(4)(C).  Early release to prerelease custody, *e.g.*, to a reentry center, or supervised release is the *reward* for completing programs and activities; it is not itself a program or activity.  An inmate who declines reentry center placement has chosen not to accept that reward, but it does not mean that he opted out of a recidivism reduction program or productive activity pursuant to 28 C.F.R. § 523.41(c)(4)(v).  Therefore, he should continue to be eligible to earn more programming credits unless some other provision applies.

The Bureau's inclusion of reentry center placement in the definitions of recidivism reduction programs and productive activities contradicts the plain language of the First Step Act.  Therefore, I will grant the Petition to the extent that the Bureau shall be ordered to remove the "opt out" status from May 7 to October 16, 2024 and October 17 to October 22, 2024 and restore 167 program days to petitioner.  The Bureau shall be ordered to recalculate petitioner's programming credits and apply them to his sentence accordingly within 10 calendar days of this Opinion and Order.[4]

---

[4] It is unnecessary to address petitioner's other First Step Act claims as I am directing the Bureau to recalculate petitioner's program credits and apply them to his sentence.

### B. <u>Second Chance Act</u>

Petitioner also argues the Bureau violated the Second Chance Act when it limited his reentry center placement to 120 days. (ECF No. 1–1 pp. 19, 20.) As is relevant here, the Second Chance Act directs the Bureau "to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility." 18 U.S.C. § 3624(c)(1).

"The [Bureau] exercises its authority pursuant to the [Second Chance Act] to determine individual prisoner [reentry center] placements by applying the five factors set forth in" 18 U.S.C. § 3621(b). *Vasquez v. Strada*, 684 F.3d 431, 434 (3d Cir. 2012); *see also* 18 U.S.C. § 3624(c)(6)(A) (instructing Bureau director to issue regulations "in a manner consistent with section 3621(b) of this title"). These factors are:

> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence—
>
>> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>>
>> (B) recommending a type of penal or correctional facility as appropriate; and

> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b). The Bureau also considers "participation and/or completion of Skills Development programs pursuant to 42 U.S.C. § 17541." *Vasquez*, 684 F.3d at 434.

Petitioner cannot meet his burden of demonstrating that the Bureau violated the applicable federal law. As quoted *supra*, the Act gives "the [Bureau] the discretion to determine whether and how long an inmate is to be pre-released to an [reentry center] provided such pre-release confinement is practicable and the [Bureau] considers § 3621(b)'s factors on an individual basis." *Burke v. Meeks*, No. 14–cv–00204, 2015 WL 1296039, at *4 (W.D. Pa. Mar. 23, 2015) (citing 18 U.S.C. § 3624(c); 28 C.F.R. § 570.22). Congress was clear that the Act should not "be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621." 18 U.S.C. § 3624(c)(4). A federal prisoner has no entitlement to placement in a reentry center prior to the end of his term of imprisonment. *Fagiolo v. Smith*, 326 F. Supp. 2d 589, 592 (M.D. Pa. 2004); *Williams v. Allenwood-Low*, No. 3:24–cv–01321, 2024 WL 4204277, at *5 (M.D. Pa. Sept. 16, 2024) ("[N]othing in the Second Chance Act, First Step Act, or § 3621(b) entitles an inmate to any guaranteed placement in [a reentry center].")

Petitioner received individualized consideration of his suitability for reentry center placement, which is all that is required. (ECF No. 6–5 p. 8.) Therefore, I will deny this claim for relief.

### IV. CONCLUSION

For the reasons stated above, I will grant the Petition to the extent that the Bureau shall remove the "opt out" status from May 7 to October 16, 2024 and October 17 to October 22, 2024 and restore 167 program days to petitioner.

The Bureau shall recalculate petitioner's First Step Act credits and apply them to his sentence accordingly within **10 calendar days**.  The rest of the Petition is denied.  An appropriate Order accompanies this Opinion.

                                           */s/ Edward S. Kiel*
                                           **EDWARD S. KIEL**
                                           UNITED STATES DISTRICT JUDGE

Dated: March 27, 2025